IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LASHANDOR SIMMONS,** *pro se* | * |
| Plaintiff | * |
| v. | * Civil No. PJM 13-0733 |
| **BANK OF AMERICA, N.A., et al.** | * |
| Defendants | * |

## **MEMORANDUM OPINION**

Lashandor Simmons, *pro se*, has sued Bank of America, N.A. ("BANA") and Mortgage Electronic Registration Systems, Inc. ("MERS"), alleging ten separate causes of action. BANA and MERS have filed a Motion to Dismiss [Paper No. 11]. For the following reasons, the Motion to Dismiss is **GRANTED** as to all counts.

**I.**

Although the Complaint provides little factual detail, the Court has pieced together what appears to be the gist of the matter from various documents filed with Defendants' Motion to Dismiss.[1]

On January 9, 2008, Simmons executed a promissory note for a loan in the amount of $299,900.00 in favor of BANA in connection with the purchase of real property located at 4703 Old Soper Road, Unit 548, Camp Spring, Maryland. (Compl. ¶ 5). On the same date, Simmons executed a Deed of Trust in favor of BANA. (Defs.' Mot. to Dismiss at Ex. A ("Deed of

---

[1] The facts alleged by Plaintiff are taken as true for the purposes of this Motion only. Because the Deed of Trust is a public record, this Court may consider it without converting the Motion into a motion for summary judgment. *See, e.g., Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.") (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Id.*

Trust")). The Deed of Trust includes a power of sale which states that, in the event of default of the obligations owed by Simmons, the lender is entitled to institute foreclosure proceedings against the Property and collect all costs incurred to foreclose. *Id*. No document submitted to the Court indicates that MERS has ever had any involvement in Simmons' Deed of Trust. *Id*.

Simmons originally filed this action in the Circuit Court for Prince George's County, seeking declaratory relief as well as compensatory, special, general, and punitive damages, and attorneys' fees and costs. She sues Defendants for: (1) Lack of Standing to Foreclose; (2) Fraud in the Concealment; (3) Fraud in the Inducement; (4) Intentional Infliction of Emotional Distress; (5) Quiet Title; (6) Slander of Title; (7) Declaratory Relief; (8) Violations of the Truth-in-Lending Act (TILA); (9) Violations of the Real Estate Settlement Procedures Act (RESPA); and (10) Rescission.

Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1441(a), based on both diversity and federal question jurisdiction. In their Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b), they claim that service of process as to one or more of them was deficient because they have never been served with summonses and that, in any event, the Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Although the Court sent Simmons a letter informing her that she could file an opposition to the Motion to Dismiss, she has not responded.

**II.**

The Federal Rules of Civil Procedure apply to a civil action after it has been removed from state court. Fed. R. Civ. P. 81(c)(1). Federal Rule of Civil Procedure 4(c)(1) states that "a summons *must* be served with a copy of the complaint." (Emphasis added). Federal Rule 4(e)(1) also allows a plaintiff to adopt the mode of service of the state "where the district court is located

2

or where service is made." Fed. R. Civ. P. 4(e)(1).  As in the federal rules, Maryland Rule 2-121(a) also requires a plaintiff to serve "a copy of the summons, complaint, and all other papers filed with it" on a Defendant.  Md. Rule 2-121(a).  From all that appears, Simmons has failed to serve BANA or MERS with the Summons (Paper No. 3) issued on March 8, 2013.

Federal Rule of Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  However, because Simmons apparently attempted to effect service, and because Defendants do not claim to have suffered prejudice, the latter of these two options would ordinarily be preferable.  *See Ngabo v. Le Pain Quotidien*, Civil Action No. DKC 11-0096, 2011 WL 978654, at *2 (D. Md. Feb. 17, 2011) ("Where there is no prejudice to the defendant and 'there exists a reasonable prospect that service may yet be obtained,' dismissal is inappropriate and courts have generally allowed the plaintiff another opportunity to effect service.'") (quoting *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3rd Cir. 1992)).  However, as a practical matter, it would make little sense to grant Simmons an extension of time to serve a Complaint that fails to state a claim under 12(b)(6).

## III.

Although Simmons' failure to effectuate service of process provides sufficient grounds for dismissal of this action, the Court also finds that she fails to state a claim for which relief may be granted pursuant to Rule 12(b)(6).

## A.

When a defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the complaint's sufficiency, taking all well-pleaded factual allegations as true

and construing them in the light most favorable to the plaintiff. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, the court need not accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Id*. There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The factual allegations must state a claim for relief that is plausible, meaning they must "permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 556 U.S. at 679.

Complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nonetheless, a *pro se* complaint must at least meet a minimal threshold of plausibility.

**B.**

As a threshold matter, the Court notes that Simmons' Complaint appears to be a form complaint, an amalgam of vague statements and legal conclusions, even naming what she believes are malefactor entities, none of which are sued in this action. At least one judge in this District has dismissed a complaint containing nearly identical allegations, s*ee Somarriba v. Greenpoint Mortgage Funding, Inc.*, 13-CV-072-RWT, 2013 WL 5308286 (D. Md. Sept. 19, 2013), and a nearly identical complaint was used in at least one other case (filed twice in this district). *See Puryear v. Dynamic Capital Mortgage Inc.*, 12-CV-3703-AW, ECF No. 7 (D. Md. Dec. 20, 2012) (case dismissed because an identical case pending); *Puryear v. Dynamic Capital Mortgage Inc.*, 12-CV-36611-JFM (D. Md. 2012) (voluntarily dismissed by plaintiff). The Court finds that Defendants' Motion to Dismiss in the present case merits equivalent disposition. The

Court finds Simmons' allegations concerning mortgage fraud and related misconduct to consist of no more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement [which] fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The several counts of the Complaint are addressed below.

## C.

In Count One (Lack of Standing), Simmons contends that Defendants "do not have the right to foreclose on the Property because Defendants . . . have failed to perfect any security interest in the Property [and] [t]hus, the purported power of sale . . . no longer applies [and] Defendants . . . do not have the right to foreclose on the property." (Compl. ¶ 47). She submits that the only parties who have standing to foreclose are the holders of the Note, who she contends are the "certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains." (*Id*. ¶ 48). She further alleges that MERS lacked authority to assign the Deed of Trust and seeks to attack a purported transfer of the Note to U.S. Bank on the basis that the transferor never physically delivered the Note. (*Id*. ¶¶ 49-63.)

First, as Defendants correctly point out, Simmons has not even alleged whether Defendants are seeking to enforce the power of sale provisions in the Deed of Trust by foreclosing on the loan. Second, in any event Simmons' claim is in direct conflict with the records applicable to the Loan and the Property. MERS does not appear to have had any involvement in her Deed of Trust, such that the allegation related to its assigning the Deed of Trust is misplaced. Further, from all that appears, U.S. Bank, an entity that is not a defendant here, did not receive an assignment of the Deed of Trust from MERS. BANA remains the owner of the loan.

5

Simmons requests that the Court "restrain and "enjoin" Defendants from "wrongful conduct" relating to the Property. (Compl. ¶ 61). But Defendants are not seeking affirmative relief; they are simply defending the suit that Simmons has brought against them. Consequently, her standing arguments are also misplaced. *See Somarriba v. Greenpoint Mortgage Funding, Inc.*, 13-CV-072-RWT, 2013 WL 5308286 (D. Md. Sept. 19, 2013) (quoting *Suss v. JP Morgan Chase Bank, N.A.,* Civil Action No. WMN–09–1627, 2009 WL 2923122, at *4 (D. Md. Sept. 10, 2009)).

An assignment by the Note holder under a Deed of Trust (if that is what has occurred) is routinely upheld by courts as valid. *See Anderson v. Burson,* 35 A.2d 452, 460 (Md.2011) (A "note may be transferred, and carries with it the security provided by the deed of trust.). Moreover, there is no indication that Simmons' Note was ever securitized; as indicated, BANA remains the owner of the Note. Accordingly, any and all allegations related to the supposed securitization of the Note hang suspended in thin air. In short, Count One contains insufficient factual allegations and does not plead a cognizable cause of action.

**D.**

In Count Two (Fraud in the Concealment), Simmons alleges that "Defendants concealed the fact that the loans [sic] were securitized" as well as the nature of such securitization in order to induce Simmons to enter into the "loans," and that Defendants "knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans [sic]." (Compl. ¶¶ 63-64). In Count Three (Fraud in the Inducement), she alleges that Defendants "intentionally misrepresented to Plaintiff [that] those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust" and misrepresented that they are the 'holder and owner' of the Note and the beneficiary of the Deed of Trust" and their failure to "disclose the

6

material terms of the transaction induced [her] to enter into the loans." (*Id.* ¶¶ 68-70). Such misrepresentations were made to "induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property." (*Id.* ¶ 71). These claims are also baseless.

To sustain a claim for fraud in the inducement under Maryland law, a plaintiff must allege "(1) that the defendant made a false statement of material fact the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 566 (D. Md. 2012) (citing *VF Corp. v. Wrexham Aviation Corp.*, 715 A.2d 188, 193 (Md. 1998)).

To support a claim for fraudulent concealment a plaintiff must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999).

Simmons has failed to "state with particularity the circumstances constituting fraud" as required by Federal Rule of Civil Procedure 9(b), namely the time, place, and contents of any false representations or the identities of the wrongdoers, in support of her claims that Defendants fraudulently concealed or induced her. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999) (noting that the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as

7

well as the identity of the person making the misrepresentation and what he obtained thereby.'") (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed.1990)).

Indeed, Simmons' allegations concerning fraud not only fail to meet the particularity requirements of Rule 9(b); they are totally at odds with the irrefutable facts. The Note attached to the Motion to Dismiss indicates that BANA is the holder of the Note, and that the Note has not been "securitized" as Simmons contends. Counts Two and Three will also be dismissed for failure to state a claim upon which relief can be granted.

### E.

In Count Four (Intentional Infliction of Emotional Distress), Simmons alleges that Defendants' conduct has "threatened [her] with the loss the Property" and that they "intentionally, knowingly and recklessly misrepresented to the Plaintiff [that] those Defendants were entitled to exercise the power of sale provision" with the "specific intent of inflicting emotional distress on the Plaintiff." (Compl. ¶¶ 76, 78, 80). Again, not even a close call.

Under Maryland law, a claim of intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2 the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones,* 380 A.2d 611, 614 (1977)).

Simmons fails to detail the "extreme and outrageous" conduct by Defendants, and fails as well to plead facts that "if true, would rise to the level of severe emotional distress." *Id.* at 115. "Nowhere does the complaint state with reasonable certainty the nature, intensity or duration of

the alleged emotional injur[ies]." *Id.* Her conclusory allegations relating to intentional infliction of emotional distress fail to state a claim for which relief can be granted.

**F.**

In Count Five (Slander of Title), Simmons claims that Defendants "disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of" documents including "the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed." (Compl. ¶ 87). She further alleges that"[a]t the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive her of the exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means." (Compl. ¶ 92).

Under Maryland law, a cause of action for "slander of title," or "injurious falsehood,"

> may consist of the publication of matter derogatory to the plaintiff's title to his property . . . of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage. The cause of action founded upon it resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases. The falsehood must be communicated to a third person, since the tort consists of interference with the relation with such persons. But the plaintiff must plead and prove not only the publication and its disparaging innuendo, as in defamation, but something more. There is no presumption, as in the case of personal slander, that the disparaging statement is false, and the plaintiff must establish its falsity as a part of his cause of action. Although it has been contended that there is no essential reason against liability where even the truth is published for the purpose of doing harm, the policy of the courts has been to encourage the publication of the truth, regardless of motive.
>
> 'In addition, the plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damage. The analogy is thus to the kind of personal slander which does not charge a crime or loathsome disease, or defame him in his business, profession, or office, and so is not actionable unless damage is proved.'

9

*Beane v. McMullen,* 291 A.2d 37, 49 (Md.1972) (quoting Prosser, *Law of Torts,* at 919–922 (4th ed. 1971)).

Here, Simmons fails to allege what publication she believes is false, which of one or more of Defendants created the supposedly false publication, or whether such publication played "a material and substantial part" in causing "special damage" to her. *Id.* Dominating everything else, of course, is the fact that the Deed of Trust gives the mortgagee or assignee the right to foreclose on the Property. As a result, any Notice of Default or Notice of Foreclosure sent to her could hardly be false. Given the bare allegations of Count Five, it will be dismissed.

## G.

In Count Six (Quiet Title), Simmons claims she is "entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Property as [of] the effective date of said cancellation, and quieting Plaintiff's title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Property created by Defendants or by their putative predecessors, or by any of them." (Compl. ¶ 95).

A claim to "quiet title" challenges an adverse claim on property. *See* Md. Code Ann., Real Prop. § 14–108(a) (providing that a person in possession of property "may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim"); *Kasdon v. G.W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995 (D. Md. 1982) ("A quiet title action is a suit in which a plaintiff seeks a decree that some allegedly adverse interest in his property is actually defective, invalid or ineffective prior to and at the time suit is brought either because the lien was invalidly created, or has become invalid or has been satisfied.").

Once again, Simmons' Complaint lacks the factual allegations necessary to state a plausible cause of action, this time to quiet title. *See Somarriba*, 2013 WL 5308286, at *7. Her sweeping claims of general illegality on the part of Defendants are essentially meaningless. *Id.* Indisputably, the Note and Deed of Trust that Defendants attached to their Motion to Dismiss show that Simmons entered into a mortgage transaction which clearly establish BANA's legal interest in the underlying property. Count Six will be dismissed for failure to state a claim.

## H.

In Count Seven (Declaratory Relief), Simmons "requests a judicial determination of the rights, obligations, and interest of the parties with regard to the Property," including a determination as to the "validity of the Trust Deeds as of the date the Notes were assigned," and "a determination of whether any Defendant has authority to foreclose on the Property." (Compl. ¶¶ 101-104).

"[T]he granting of declaratory relief is entrusted to the discretion of the district court." *Great American Ins. Co. v. Gross,* 468 F.3d 199, 209 (4th Cir. 2006) (citing 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration")). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 257 (4th Cir. 1996) (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995)). Maryland law provides that "[a]ny person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of

construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." Md. Code Ann., Cts. & Jud. Proc. § 3-406.

The same deficiencies that do in Simmons' other claims are fatal to this Count as well. Simmons' allegations are altogether too vague and threadbare for the Court to render a declaration with respect to the parties' rights that would resolve a dispute or otherwise serve a useful purpose. *See Somarriba*, 2013 WL 5308286, at *7. Her requests for a far-reaching declaration from this Court of "the rights, obligations, and interests of the parties with regard to the Property" (Compl. ¶ 101), would be inefficient, impractical, and would not lead to resolution of any present or future legitimate dispute between the parties. *Id.* Count Seven will be dismissed.

## I.

Count Eight (Violation of TILA, 15 U.S.C. § 1601, *et. seq*.) and Count Nine (Violation of RESPA, 1 U.S.C. § 2601, *et. seq.*) both fail as a matter of law. All actions for damages under TILA must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The "'date of the occurrence of the violation' is the date on which the borrower accepts the creditor's extension of credit." *Moseley v. Countrywide Home Loans, Inc.*, Case No. 7:09-cv-210-FL, 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010). Similarly, a RESPA claim for violation of §§ 2607 or 2608, which are the only sections of RESPA that may impose civil liability for actions taking place during the loan origination process, must be brought "within 1 year . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614.

Simmons alleges that Defendants are liable for violations that occurred during the origination of her loan on January 9, 2008. The statute of limitations for any alleged TILA or

RESPA violations therefore expired on January 8, 2009. Simmons filed her original Complaint in state court on January 29, 2013, more than 4 years later. Counts Eight and Nine are time-barred.

## J.

In Count Ten (Rescission), Simmons claims she is "entitled to rescind the loan" based on "1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; and 4) Public Policy Grounds." (Compl. ¶ 119).

She claims that TILA "extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received" certain "false or incomplete disclosures." (*Id.* ¶ 120). She also alleges that Defendants "failed to properly disclose the details of the loan"; specifically, "the initial disclosures do not initial TIL [sic] disclosures, and [the] lack of diligence and collusion on the part of the broker, lender, and underwriter to place Plaintiff in a loan she could not afford." (*Id.*) She claims broadly that the "public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender." (*Id.* ¶ 121).

This claim must be dismissed because it was not, as Simmons herself pleads, filed within three years of the closing of the loan, as required by the statute. *See* 15 U.S.C. § 1635(f). Further, to the extent her claim for rescission rests on other causes of action in the Complaint, her failure to allege facts in support of any of these other claims is also the death knell of her rescission claim.[2]

---

[2] To the extent that Simmons' Complaint is an effort to obtain review of a foreclosure proceeding in state court (which, to be clear, is not alleged in the Complaint), the Court notes that such a review is not properly before the Court. It is well established under the *Rooker/Feldman* doctrine that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923) ("the jurisdiction of the District Court "is strictly original"); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 and 482 (1983).

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss [Paper No. 11], as to all Defendants, served or unserved, is **GRANTED** as to all counts.

A separate Order will **ISSUE**.

.

_____/s/_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**February 6, 2014**